# Richmond.

## HUNTER v. COMMONWEALTH.

### January 23, 1908.

1. STEAMBOATS—*Wharfage—Public Use—Code* 1904, *Section* 12940—*Constitutional Law.*—If a steamboat wharf is leased to a steamboat company for a percentage of all freight and passenger traffic over the wharf, but no charges are made by either the owner or lessee for the use of the wharf, but the public is permitted to use it without compensation, such wharf is not within the intendment of section 12940, Code 1904, requiring certain accommodations to be provided and imposing a penalty for the neglect thereof. The provision of the section that it is "not to apply to any wharf where no wharfage is charged," means no wharfage *to the public.* The public is not affected by such a use of a wharf as is above described, and any attempted regulation of its use would be an unwarrantable invasion of private rights.

Error to a judgment of the circuit court of King George county.

*Reversed.*

The opinion states the case.

*St. George R. Fitzhugh* and *A. T. Embrey,* for the plaintiff in error.

*Robert Catlett, Assistant to the Attorney-General,* for the commonwealth.

WHITTLE, J., delivered the opinion of the court.

Robert W. Hunter brings error to a judgment of the circuit

court of King George county, convicting him of a misdemeanor, and imposing a fine for the alleged violation of section 1294o, Va. Code, 1904.

That act requires the owner of a steamboat wharf to provide suitable accommodations for the patrons of steamboats using the wharf, including "separate and non-communicating rooms for the white and colored races;" such rooms to be properly lighted and heated from one-half hour before the scheduled arrival of the boat until such time after its departure as will provide for the accommodation of debarking passengers. The act prescribes that a violation of its provisions shall constitute a misdemeanor, punishable by fine, and concludes with the proviso: "that this act shall not apply to any wharf where no wharfage is charged."

It appears from the agreed facts, that the plaintiff in error is the life tenant of the wharf in question, which, at the time of the institution of the prosecution, was used by the Washington and Potomac Steamboat Company for the reception and delivery of freight and passengers, under an agreement, by the terms of which the company paid Hunter ten *per centum* of all freight and passenger traffic over the wharf; that the company charged no wharfage or toll on any freight or passenger traffic for the use of the wharf, but suffered the public to use it without compensation; that Hunter never exacted any wharfage from the public; and that the amount paid by the company to him was regarded by both parties as "rent" for the use of the wharf, "so that the steamboat company might throw it open to the public free of charge."

Upon the foregoing facts, it is clear that the case in judgment is not within the intendment of the act. The basic principle upon which the power of the legislature to regulate individual or corporate use of private property rests, is, that the public are directly affected by such use. Where the public are not so affected, there is no occasion—and, indeed, no authority—for the exercise of this paternal governmental function; and any

such attempted regulation would constitute an unwarrantable invasion of private right.

In the *"Sinking Fund Cases,"* 99 U. S. 727, 25 L. Ed. 504, Mr. Justice Bradley, in discussing the scope of the decision in *Munn* v. *Illinois,* 94 U. S. 112, 24 L. Ed. 77, observes: "The inquiry there was as to the extent of the police power in cases where the public interest is affected; and we held that when an employment or business becomes a matter of such public interest and importance as to create a common charge or burden upon the citizen; in other words, when it becomes a practical monopoly to which the citizen is compelled to resort, and by means of which a tribute can be exacted from the community, it is subject to regulation by the legislative power."

In that case, the supreme court of the United States held, with respect to certain warehouses in the city of Chicago, operated by the owners without being incorporated, that, "When the owner of property devotes it to a use in which the public has an interest he, in effect, grants to the public an interest in such use, and must, to the extent of that interest, submit to be controlled by the public for the common good, as long as he maintains the use." And it was upon that theory that the court sustained the constitutionality of the Illinois statute regulating warehouse charges.

In order that this act may not contravene the 14th Amendment, we must interpret the proviso as if it read: "this act shall not apply to any wharf where no wharfage is charged *to the public."* When so construed, the enactment is in harmony with the legislative policy of the state in regard to public service corporations, and the true principle upon which the power of governmental control is founded.

For these reasons, without further elaboration of the well recognized principles involved, we are of opinion to reverse the judgment of the circuit court and dismiss the prosecution.

*Reversed.*